No. 19-_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————

IN RE UNIVERSITY OF MICHIGAN, ET AL.,

*Petitioners/Defendants,*

———————————

FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION
CASE NO. 18-cv-11776
HON. ARTHUR J. TARNOW

———————————

**EMERGENCY PETITION FOR WRIT OF MANDAMUS
ACTION REQUESTED BEFORE JUNE 12, 2019**

———————————

Timothy G. Lynch
Vice President and General Counsel
UNIVERSITY OF MICHIGAN
5010 Fleming Administration Bdg.
503 Thompson St.
Ann Arbor, MI 48109
(734) 764-0305
timlynch@umich.edu

Stephen J. Cowen
Amanda K. Rice
Erin L. Ramamurthy
Andrew J. Clopton
JONES DAY
150 W. Jefferson St., Suite 2100
Detroit, MI 48226
(313) 230-7954
scowen@jonesday.com

*Counsel for Petitioners/Defendants*
*University of Michigan and the Board of Regents of the University of Michigan*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 19-_____    Case Name: In Re University of Michigan et al

Name of counsel: Erin L. Ramamurthy

Pursuant to 6th Cir. R. 26.1, Boards of Regents of the University of Michigan
Name of Party
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 11, 2019 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Erin L. Ramamurthy

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 19-_____     Case Name: In Re University of Michigan et al

Name of counsel:  Erin L. Ramamurthy

Pursuant to 6th Cir. R. 26.1, University of Michigan
                                                            *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 11, 2019 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Erin L. Ramamurthy

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT....................................................................1

STATEMENT OF ISSUES...............................................................................1

INTRODUCTION ..........................................................................................2

STATEMENT OF THE CASE.........................................................................6

SUMMARY OF THE ARGUMENT ................................................................9

STANDARD OF REVIEW.............................................................................12

ARGUMENT ...............................................................................................13

I.   THE DISTRICT COURT ABUSED ITS DISCRETION..........................13

    A.   District Courts Lack Authority to Order that Settlement
        Conferences Be Conducted On the Record in Open Court..................13

    B.   District Courts Lack Authority to Command a Specific, High-
        Ranking State Official to Attend a Settlement Conference..................17

    C.   Even If District Courts Have Some Discretion To Order a Specific
        Representative to Appear at Settlement Conference to Be
        Conducted in Open Court, The District Court Abused That
        Discretion Here. ...............................................................................22

II.   MANDAMUS IS APPROPRIATE........................................................29

    A.   The University Has No Other Means To Obtain Relief. ......................29

    B.   This Petition Presents New And Important Problems For The
        Court's Review. ................................................................................30

    C.   The University Will Suffer Irreparable Harm If It Is Unable To
        Obtain The Relief That It Seeks........................................................31

CONCLUSION.............................................................................................32

# TABLE OF AUTHORITIES

**Page**

CASES

*Ayotte v. Planned Parenthood of N. New England*,
546 U.S. 320 (2006) ..................................................................... 25

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*,
745 F.3d 283 (7th Cir. 2014)......................................................... 32

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ..................................................................... 13

*Chesher v. Allen*,
122 F. App'x 184 (6th Cir. 2005) (per curiam)............................. 13

*Cincinnati Gas & Elec. Co. v. General Elec. Co.*,
854 F.2d 900 (6th Cir. 1988)......................................................... 16

*Clark v. Stapleton Corp.*,
957 F.2d 745 (10th Cir. 1992)....................................................... 15

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018)................................. 3, 4, 5, 6, 7, 8, 25

*E.E.O.C. v. K-Mart Corp.*,
694 F.2d 1055 (6th Cir. 1982)....................................................... 13

*Ewing v. Board of Regents of Michigan*,
552 F. Supp. 881 (E.D. Mich. 1982) ............................................ 25

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
332 F.3d 976 (6th Cir. 2003)................................. 10, 14, 15, 16, 17

*In re the Cincinnati Enquirer*,
94 F.3d 198 (6th Cir. 1996) ..................................................... 15, 16

*In re F.D.I.C.*,
58 F.3d 1055 (5th Cir. 1995)..................................................................31

*In re Life Inv'rs Ins. Co. of Am.*,
589 F.3d 319 (6th Cir. 2009)................................................................30

*In re Lott*,
424 F.3d 446 (6th Cir. 2005).................................................................30

*In re NLO, Inc.*,
5 F.3d 154 (6th Cir. 1993)......................................................... 17, 31, 32

*In re Perrigo Co.*,
128 F.3d 430 (6th Cir. 1997)................................................................13

*In re Stone*,
986 F.2d 898 (5th Cir. 1993).................................................................21

*In re Stone*,
986 F.2d 900 (5th Cir. 1993)...................................................... 21, 22, 27

*John Doe v. University of Michigan, et al.*,
No. 18-cv-11776......................................................................................1

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.
Co.*,
463 U.S. 29 (1983)................................................................................28

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018)...........................................................................25

*Sequal Techs., Inc. v. Stern*,
No. 10CV2655 DMS NLS, 2012 WL 474464 (S.D. Cal. Feb. 14,
2012)...................................................................................................22

*U.S. v. Glen Falls Newspapers, Inc.*,
160 F.3d 853 (2d Cir. 1998)..................................................................15

*United States v. Hemphill*,
 369 F.2d 539 (4th Cir. 1966)..................................................................31

*United States v. Toler*,
 No. 2:07-CV-603, 2009 WL 10679182 (S.D. Ohio Dec. 30, 2009)...............22

*United States v. U.S. Dist. Court for N. Mariana Islands*,
 694 F.3d 1051 (9th Cir. 2012), *as amended* (Oct. 16, 2012).........20, 21, 22, 27

## STATUTES

28 U.S.C. § 473....................................................................................17, 19

All Writs Act, 28 U.S.C. § 1651(a).......................................................... 1, 13

## OTHER AUTHORITIES

Fed. R. App. P. 21....................................................................................1

Fed. R. Civ. P. 16.................................................................................17, 18

Federal Rule of Evidence 408.................................................................. 16

LR 16.3................................................................................................ 16

LR 16.6................................................................................................ 19

Mich. Const. Article 8, § 5................................................................25, 26

## JURISDICTIONAL STATEMENT

This Petition arises from three Orders issued by Judge Arthur J. Tarnow in *John Doe v. University of Michigan, et al.*, No. 18-cv-11776, a case pending in the United States District Court for the Eastern District of Michigan.[1] This Court has jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), as set forth in Rule 21 of the Federal Rules of Appellate Procedure.

## STATEMENT OF ISSUES

1.    Whether a district court, as a matter of law, can require a high-ranking state official to participate in on-the-record settlement conference in open court.

2.    Whether Judge Tarnow abused his discretion when he ordered the President of the University of Michigan to attend a settlement conference based on his personal view that the President should "explain to the media, to the public, and perhaps most importantly to the faculty and the students" the University's sexual

---

[1] The district court's May 1, 2019 order was made during a telephonic status conference. (*See* May 1, 2019 Tr. at 9:13–10:24, 11:10–25.) The transcript of the May 1, 2019 telephonic status conference is attached hereto as Exhibit A. The May 8, 2019 Order denied the University's motion for reconsideration of the May 1 Order and "further ordered" the University's President to attend the "settlement conference on Tuesday, June 11th at 11:00 AM." (Order Denying Defendants' Motion for Reconsideration, RE 45, Page ID # 1321.) A copy of that Order is attached hereto as Exhibit B. The June 11, 2019 Order terminated without prejudice the University's Motions for Judgment on the Pleadings and for a Protective Order and, in relevant part, stated that the conference "will be held on the record in open court" because "this case concerns matters of public interest." (Order Terminating as Moot Defendants' Motion for Judgment on the Pleadings and Motion for Protective Order, RE 54, Page ID # 1805.) A copy of that Order is attached hereto as Exhibit C.

misconduct policy, and then, just two days before that conference, determined that—contrary to a prior representation from his chambers—the conference would be held on the record in open court.

## **INTRODUCTION**

The University of Michigan has filed this emergency mandamus petition because, earlier today, Judge Tarnow issued an unprecedented Order—in direct contradiction of a prior representation from his chambers, and with less than two days' notice—requiring the University to conduct settlement negotiations on the record in open court. To make matters worse, Judge Tarnow has also ordered that the University's President, a high-ranking official of the State of Michigan, must personally attend this conference so that Judge Tarnow can air to the President his personal views about the wisdom of the University's policy regarding allegations of sexual assault, directly question the President about that policy, and require the President to publically defend that policy. Judge Tarnow's Orders constitute a clear abuse of discretion and, with the conference set for June 13, 2019, the University is without other means of recourse. Mandamus is the appropriate remedy.

Universities across the country are grappling with difficult and sensitive questions related to the procedures for addressing sexual assault allegations leveled by and against students. The University of Michigan is no exception. Indeed, preventing sexual misconduct, supporting students who have been the victims of

sexual misconduct, and providing fair processes for adjudicating sexual-misconduct claims are priorities for the University's entire leadership.

In this case, Mr. Doe, a student at the University of Michigan, sought to halt the University's investigation into allegations that he sexually assaulted a fellow student before the investigation was completed. His complaint was that the University did not provide a live hearing with an opportunity for direct cross-examination of the other party and adverse witnesses. This Court resolved that key issue in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). In light of that ruling, the University of Michigan amended its policy to provide for direct cross-examination in hearings conducted by experienced litigators who are not University employees— with appeals heard by a retired federal district court judge. Following *Baum*, the Sixth Circuit remanded this case—then pending on appeal—to the district court to "consider the impact of *Baum* and Michigan's interim policy in the first instance." And the plaintiff was offered a hearing with cross examination before one of the external hearing officers. In the wake of *Baum* and the University's resultant policy change, resolving what little was left of this dispute should have been simple.

Unfortunately, it has not been. At a May 1, 2019 telephone status conference, Judge Tarnow ordered the President of the University of Michigan to personally attend what he referred to as a "settlement conference," which was set for June 13, 2019. Judge Tarnow refused to permit the President to participate telephonically.

- 3 -

And he refused to allow another University official with full settlement authority and more particularized knowledge of the relevant issues to attend in his stead. Although Judge Tarnow had no authority to compel the President to do this, the University—in an effort to respect the district court's authority and facilitate a resolution to this matter—had decided to attempt to comply (rather than seek mandamus at that juncture). It did so in reliance on written confirmation from Judge Tarnow's chambers—in response to University counsel's direct request for confirmation that "the settlement conference will (a) be held in chambers, and (b) not be on the record"—that "Yes, the settlement conference will be held in chambers, off the record."

Then, on June 11, 2019—just *two days* before the conference—Judge Tarnow issued a brief order terminating as moot two motions filed almost a year ago. In the final paragraph of that Order, Judge Tarnow "t[ook] the opportunity to remind the parties of the upcoming settlement conference." He further stated, in direct contradiction to his chambers' prior representation: "Because this case concerns matters of public interest, the conference, although an informal proceeding, will be held on the record in open court."

Judge Tarnow has made clear that he intends to use this conference not as a means to facilitate good-faith efforts at settlement, but rather as an opportunity for him to personally and publically engage with a State official about his views on the

wisdom of difficult policy choices that the U.S. and Michigan Constitutions, as well as this Court's decision in *Baum*, leave to the University's discretion. District courts do not have that power: They cannot compel parties to conduct settlement negotiations in open court; they cannot compel specific, high-ranking officials to appear for a settlement conference on a party's behalf; and they clearly abuse their discretion where they order both things together, at the very last minute, without considering more appropriate and less burdensome alternatives.

The University recognizes that mandamus is a serious and unusual remedy. But Judge Tarnow's abrupt, last-minute change of position regarding the "on the record" status of the upcoming conference, coupled with the imposition on the principal executive officer of an independent State entity, is serious and unusual too (indeed, it is unprecedented). Left undisturbed, his Orders threaten to set a dangerous precedent whereby *any* state, federal, or corporate official could be hauled into open court, anywhere in the country, so that any individual judge may cross-examine that official on matters of public policy, in the name of "settlement." Judge Tarnow denied the University's emergency motion for reconsideration of its order requiring the President to personally attend, and his eleventh-hour order that proceedings be held publicly has left the University without other means of relief. In addition, the University will suffer irreparable harm if this Court declines to take up this new and important question.

For these reasons, the University respectfully requests that this Court issue a writ of mandamus ordering the district court (1) to hold any settlement conference in private and in keeping with the settlement privilege, and (2) to permit the University to send to any such conference a representative of its choosing with full settlement authority.

## STATEMENT OF THE CASE

This case arises from allegations of sexual assault against Mr. Doe by a fellow University student. (*See* Defendants' Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, RE 21, Page ID # 310.) The University commenced an investigation into those allegations, but Mr. Doe filed suit before it was complete. (*See id.*; Complaint, RE 1, Page ID # 1–34.) Mr. Doe contended that he was entitled to various remedies, including a temporary restraining order and preliminary injunction that would halt the University's investigation and require the University to conduct a live hearing in which he would be guaranteed an opportunity to cross-examine his accuser and witnesses directly. (*See* Complaint, RE 1, Page ID # 1–34; Motion for Temporary Restraining Order and Preliminary Injunction, RE 4, Page ID # 133–62.)

Judge Tarnow granted Mr. Doe's preliminary-injunction motion in part, ordering the University to provide a live hearing with cross-examination. (*See* Order, RE 30, Page ID # 743–44.) The University appealed that injunction order

and Mr. Doe filed a cross-appeal.[2] (*See* Defendants' Notice of Appeal, RE 32, Page ID # 818–20; Plaintiff's Notice of Cross-Appeal, RE 36, Page ID # 1067–68.) The University also filed a motion to stay the injunction pending appeal, which the district court granted. (*See* Defendants' Motion to Stay Pending Appeal, RE 33, Page ID # 821–46; Order Granting Defendants' Motion to Stay Pending Appeal, RE 41, Page ID # 1260–62.) While the appeals were pending, this Court decided *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), which held that when a student is accused of sexual misconduct and credibility is at issue, the parties are entitled to a live hearing with cross-examination, conducted either by the parties themselves or their agents. The University amended its sexual misconduct policy to comply with *Baum*, and this Court remanded this case to the district court. (Order, Case No. 18-1903, Doc. No. 33-1.)

On May 1, 2019, Judge Tarnow held a telephonic status conference at which he ordered the President of the University—who is not a party to this case—to personally appear in court for a conference, despite the University's willingness to send another representative with full settlement authority in his stead. (*See* May 1, 2019 Tr. at 9:13–10:24, 11:10–25.) Although Judge Tarnow has characterized this conference as a "settlement conference," his statements make clear that he sees it as

---

[2] The University's appeal was docketed in this Court as case number 18-1870. Mr. Doe's cross-appeal was docketed as case number 18-1903.

an opportunity to discuss the details of the University's sexual misconduct policy with the President.  (*See id.* at 8:23–9:1, 10:17–24.)  Indeed, his chambers stated that "even if the parties are able to resolve the cross-examination issue as applied to Mr. Doe, [Judge Tarnow] would still like to schedule a meeting with the President regarding the policy."  Ex. D (Email of Apr. 30, 2019).  Judge Tarnow refused to permit the University President to participate telephonically, explaining that, in his view, "[t]his should be more important to him than almost anything going on at the university" and that nothing should be "more important than resolving what is a hot button issue at every university in this country."  (*See* May 1, 2019 Tr. at 14.)

The University filed an emergency motion for reconsideration of that Order on May 6, 2019.  (*See* Defendants' Emergency Motion for Reconsideration, RE 44, Page ID #1268–93.)  Judge Tarnow denied that motion without analysis on May 8, 2019 and ordered the President of the University to "appear for a settlement conference" set for June 13, 2019. (Order Denying Defendants' Motion for Reconsideration, RE 45, Page ID# 1320–22.)

On May 24, 2019, Judge Tarnow's chambers confirmed, in response to University counsel's specific inquiry, that "Yes, the settlement conference will be held in chambers, off the record."  *See* Ex. E (Email of May 24, 2019).  Although Judge Tarnow has no authority, at least absent extraordinary circumstances not present here, to order the President to attend even a private settlement conference,

the University and its President had elected to comply with Judge Tarnow's Orders—rather than ask this Court to intervene—in reliance on the Court's representation.

On June 11, 2019—just two days before the conference, as an aside in an unrelated Order—Judge Tarnow suddenly changed course: "Because this case concerns matters of public interest," he ordered, "the conference, although an informal proceeding, ***will be held on the record in open court***." (Order Terminating as Moot Defendants' Motion for Judgment on the Pleadings and Motion for Protective Order, RE 54, Page ID # 1805) (emphasis added). Particularly in light of Judge Tarnow's prior conduct in this matter, the University has every reason to believe that this on-the-record "settlement" conference will be a public spectacle, not a legitimate effort to encourage an amicable resolution. With the conference fast approaching and no other means of recourse, the University filed the instant Emergency Petition for a Writ of Mandamus and a separate Emergency Motion for Stay.

## SUMMARY OF THE ARGUMENT

Judge Tarnow abused his discretion when he ordered the University's President to personally attend a settlement conference to be conducted in public and on the record, after assuring the parties that the settlement conference would be

conducted like all settlement conferences—in private, under the protection of settlement privileges, and in keeping with a desire actually to resolve a case.

First, consistent with the Federal and Local Rules, this Court's precedent, and long-standing tradition, "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). This Court has applied that principle in holding that settlement negotiations are privileged and in restricting public access to settlement-related proceedings. Judge Tarnow's contrary order flouts those precedents and amounts to a forced, unlawful, and preemptive waiver of all settlement privilege.

Second, although district courts have the power to compel *a* party representative to attend a settlement or other conference, they do not have the power to dictate *who* that person must be. Were it otherwise, high-ranking state, federal agency, and corporate officials could be hauled into courts nationwide—notwithstanding valid delegations of authority to subordinates who are available and better equipped to address the legal disputes at hand.

This Court need not decide, however, whether either one of this errors, standing alone, would constitute an abuse of discretion: In this case, the two legal errors compound each other and, under the circumstances, constitute a clear abuse of discretion. Judge Tarnow's late-breaking order that the settlement conference be

held in open court directly contradicted his chambers' prior written representation on which the University has relied. He provided no reason for changing course, and did not even acknowledge the strong public interest in facilitating settlement by preserving the confidentiality of settlement negotiations. In addition, Judge Tarnow "believe[d] . . . 100 percent" that the representative the University proposed to send in the President's stead (specifically, the University's Vice President and General Counsel) would have full settlement authority. (May 1, 2019 Tr. at 9:25-10:5) He candidly stated, however, that he would simply prefer to discuss university sexual assault policies, in person, with the University President. (*See id.* at 6:14–17; 14:2–17.). Particularly given that the University President is a high-ranking State official, Judge Tarnow's apparent intention to advise him on matters of University policy— in public and on the record—poses serious federalism concerns and threatens the dignity of the institution.

A writ of mandamus is the appropriate remedy. The conference is less than two days away, and the University has no other means to obtain relief. In addition, the scope of judicial authority (1) to compel public settlement conferences, and (2) to compel a specific, high-ranking individual to attend are new and important problems that merit this Court's attention. If this Court does not intervene, it will leave district courts in this Circuit with the impression that they may disregard both the settlement privilege and governmental delegations of authority to command the

personal, public presence of any high-ranking officer, of any entity or organization, from anywhere in the country, for any reason at all. In the meantime, the University—and other litigants subjected to similar attempts at judicial overreach—will suffer irreparable harm.

## STANDARD OF REVIEW

The All Writs Act allows this Court to "issue all writs necessary or appropriate in aid of [its] jurisdictio[n]." 28 U.S.C. § 1651(a). Mandamus relief is appropriate when (1) the "right to issuance of the writ is clear and indisputable," (2) "the party seeking issuance of the writ [has] no other adequate means to attain the relief [it] desires," and (3) "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004).

The right to mandamus is clear and indisputable "where there is usurpation of judicial power or a clear abuse of discretion." *E.E.O.C. v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982). "These hurdles, however demanding, are not insuperable." *Cheney*, 542 U.S. at 381. That is especially true in this Circuit, which "has a more flexible approach to mandamus than other[s]." *Chesher v. Allen*, 122 F. App'x 184, 187 (6th Cir. 2005) (per curiam); *see also In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997) (mandamus is appropriate to address "questions of unusual importance").

# ARGUMENT

## I.   THE DISTRICT COURT ABUSED ITS DISCRETION.

Requiring the University's President to personally attend a public, on-the-record conference constitutes an abuse of discretion, such that the University's right to a writ of mandamus is clear and indisputable.  *See E.E.O.C.*, 694 F.2d at 1061. First, as a matter of law, district courts lack authority to order that settlement discussions be conducted on the record in open court.  Second, and also as a matter of law, district courts lack authority to order a specific, high-ranking state official to attend a settlement conference.  Third, even if district courts had some measure of discretion either to order that settlement negotiations be conducted in open court or to order a specific official to attend settlement negotiations, Judge Tarnow clearly abused any such discretion here by ordering *both* without considering more appropriate and less burdensome options, without providing a reasoned justification, and after waiting until fewer than 48 hours before the settlement conference to negate his chambers' assurance, 18 days earlier, that the conference would be private and privileged.

### A.   District Courts Lack Authority to Order that Settlement Conferences Be Conducted On the Record in Open Court.

Courts have long recognized the important public interest in facilitating the amicable resolution of disputes.  After all, "[t]he ability to negotiate and settle a case

- 13 -

without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system." *Goodyear*, 332 F.3d at 980.

To be effective, settlement negotiations must be private and protected from future disclosure. As a result, "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Id.* "Settlement proceedings," accordingly, "are historically closed procedures." *In re the Cincinnati Enquirer*, 94 F.3d 198, 199 (6th Cir. 1996). This Court has explained why:

> Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party. Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative quid pro quos, and generally make statements that would otherwise belie their litigation efforts.

*Id.*

Opening settlement negotiations to the public would undermine the entire enterprise. "Few cases would ever be settled if the press or public were in attendance at a settlement conference or privy to settlement proposals." *U.S. v. Glen Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d Cir. 1998). Indeed, this Court has held that even the possibility of future disclosure of settlement discussions would cause "the entire negotiation process [to] collapse[ ] upon itself, and the judicial efficiency it fosters [to be] lost." *Goodyear*, 332 F.3d at 980; *cf. also, e.g., Clark v. Stapleton*

- 14 -

*Corp.*, 957 F.2d 745 (10th Cir. 1992) ("[T]he guarantee of confidentiality is essential to the proper functioning of an appellate settlement conference program.").

For all of these reasons, right of public access to settlement negotiations "is negligible to nonexistent." *Glen Falls*, 160 F.3d at 858. That proposition is reflected in Federal Rule of Evidence 408, which restricts the use of evidence regarding "conduct or . . . statement[s] made during compromise negotiations." It is reflected in the Local Rules for the Eastern District of Michigan, which provide that "[c]ommunications in [alternative dispute resolution] proceedings are confidential, . . . are not subject to discovery, are not admissible in a proceeding, and may not be disclosed to anyone other than the . . . participants unless the court permits disclosure." LR 16.3(d). And it is reflected in a long line of authority, including this Court's decision in *Goodyear*, recognizing that "any communications made in furtherance of settlement are privileged" and not discoverable by third parties. 332 F.3d at 983; *see also id.* at 980–81 (describing cases showing that "confidential settlement communications are a tradition in this country").

All of "[t]his is true whether settlement negotiations are done under the auspices of the court or informally between the parties." *Id.* at 980. Indeed, this Court has previously declined to permit media to attend pre-trial settlement proceedings, concluding that "the need for privacy in settlement talks outweighed any First Amendment right of access to the proceedings." *Id.* (discussing *Cincinnati*

*Enquirer*, 94 F.3d at 199, and *Cincinnati Gas & Elec. Co. v. General Elec. Co.*, 854 F.2d 900, 903–04 (6th Cir. 1988)).   And it has granted a petition for mandamus where a district court purported to compel participation in a summary jury trial intended as a settlement tool.   *In re NLO, Inc.*, 5 F.3d 154 (6th Cir. 1993).   "[T]he provisions of Rule 16," which authorize district courts to schedule settlement conferences, "do not permit compulsory participation in settlement proceedings such as summary jury trials."   *Id.* at 157.

Judge Tarnow ignored all of this.   Without even attempting to justify his ruling, he ordered the parties—including the University President himself—to participate in on-the-record settlement negotiations.   His decision flouts precedent and a long historical tradition supporting privacy in settlement negotiations.   And it amounts to a compelled, preemptive, and wholesale waiver of the settlement privilege this Court recognized in *Goodyear*.   Indeed, Judge Tarnow's Order turns the *Goodyear* privilege on its head, forcing the parties to forfeit any ability to invoke privilege in the future, turning settlement negotiations into a public spectacle, and undermining any legitimate efforts to facilitate amicable resolution.   There is no legal authority supporting that result.

**B.    District Courts Lack Authority to Command a Specific, High-Ranking State Official to Attend a Settlement Conference.**

    **1.**    <u>No Federal Rule, Local Rule, or Statute Empowers District Courts to Require a Specific Individual to Attend a Settlement Conference.</u>

Federal Rule of Civil Procedure (FRCP) 16, Eastern District of Michigan Local Rule (LR) 16.6, and 28 U.S.C. § 473 authorize district courts to take certain steps to encourage settlement and otherwise manage litigation. None empowers courts to override a litigant's own choice of representative and order the individual the district court happens to prefer to personally attend a settlement conference.

FRCP 16 provides, in relevant part:

> If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement.

Fed. R. Civ. P. 16 (c)(1). The Rule thus allows courts to require "a party or its representative" to attend a settlement conference; it does not empower courts to decide who that representative must be. To the contrary, the ordinary meaning of the word "representative" almost always entails someone chosen as such by the person or entity being represented. The Advisory Committee notes confirm this straightforward and common-sense interpretation of Rule 16, allowing the parties themselves to determine their particular representatives: "The selection of the appropriate representative should ordinarily be left to the party and its counsel." *See* Fed. R. Civ. P. 16 Advisory Cmte. Notes to 1993 Amendment.

But that's not all.  The notes further state that "[p]articularly in litigation in which governmental agencies" are involved, "*the most that should be expected* is access to a person who would have a major role in submitting a recommendation to the body or board with ultimate decision-making responsibility." *Id.* (emphasis added).  The University went further than that by committing to the in-person attendance of a representative with full settlement authority.  Nothing in the Federal Rules or Committee notes suggests that district courts have the power to demand anything more.

The Eastern District of Michigan Local Rules, for their part, state:

> The court may require parties to be present [at a settlement conference].  *For parties that are not natural persons, the court may require a natural person representing that party who possesses ultimate settlement authority to attend in person.*

LR 16.6, Settlement Conferences (emphasis added). That Rule, like its federal counterpart, provides that district courts may require "*a* person . . . who possesses ultimate settlement authority to attend" a settlement conference.  *Id.* (emphasis added).  But where a party agrees to send such a person, nothing in the Local Rules suggests that a court can specify some other person with whom it would rather speak.

28 U.S.C. § 473(b)(5) confirms that proposition.  That statute provides that the district court "shall consider and may include" "a requirement that . . . representatives of the parties with authority to bind them in settlement discussions

be present or available by telephone during any settlement conference." It thus authorizes district courts to require *a* party representative with settlement authority to attend a settlement conference, but does not permit courts to dictate who that representative must be.

The Federal Rules, Local Rules, and U.S. Code thus speak in one voice. Each makes clear that courts may order a representative with settlement authority to attend a settlement conference. None authorizes district courts to order a specific official to attend when an individual with settlement authority would otherwise be available.

      2.    <u>Precedent Confirms That District Courts Lack Authority to Compel a Specific, High-Ranking Official to Be Present for Settlement Conferences.</u>

Other Courts of Appeals have held that district courts cannot order specific officials to attend settlement conferences without special justification.

In *United States v. U.S. Dist. Court for N. Mariana Islands*, 694 F.3d 1051 (9th Cir. 2012), *as amended* (Oct. 16, 2012), the Ninth Circuit held that "the district court abused its discretion in ordering a government representative with full settlement authority to appear in person for an initial settlement conference." *Id.* at 1062–63. The court held that a district court's power to order party representatives to participate in settlement conferences "is not limitless" and is "subject to review for abuse of discretion." *Id.* at 1059. And it granted a writ of mandamus because the district court had failed to consider "less drastic steps" before requiring the

government to send a representative with full settlement authority to a pretrial conference. *Id.* at 1061.

The Fifth Circuit reached a similar result in *In re Stone,* 986 F.2d 898, 900 (5th Cir. 1993). There, the district court had issued a standing order requiring the federal government to send "a representative with full settlement authority" to attend settlement conferences in person. *Id.* at 900. The Fifth Circuit held that although district courts can "require a party to have a representative with full settlement authority present—or at least reasonably and promptly accessible—at pretrial conferences" the district court abused its discretion by "routinely requiring" such a representative to be present at all such conferences. *Id.* at 903–05. The court ultimately found, however, that granting a writ would be premature because "[t]he able district judge ha[d] indicated that he welcome[d] this court's exposition of this issue" and the Fifth Circuit was "confident that he [would] abide by [its] decision and adjust his directives accordingly." *Id.* at 905.

Judge Tarnow's Orders are even further outside the bounds of judicial discretion than were the orders on review in *Mariana Islands* and *Stone*. In both of those cases, courts exceeded their authority by merely requiring that *a* representative with settlement authority be present at a conference. Neither court had gone as far as Judge Tarnow by purporting to dictate *which* such representative needed to be physically present. (*See* May 1, 2019 Tr. at 14:2–17.) And unlike in *Mariana*

- 20 -

*Islands* and *Stone*, Judge Tarnow issued this Order despite representations from the University that "the President is not the university official who has primary responsibility for the [sexual misconduct] policy," (*id.* at 7:23–25), and that another individual with full settlement authority would attend the conference in the President's stead. (*Id.* at 9:25–10:4.) Even though he accepted those representations as true, Judge Tarnow nevertheless repeatedly demanded that the President attend: "I want the President here," the court stated. (*Id.* at 10:7–11.) "So he shall be here." (*Id*. at 10:16–24.)

Mariana *Islands* and *Stone* thus confirm that Judge Tarnow exceeded his authority by ordering a specific, high-ranking individual to attend a settlement conference when another individual with settlement authority was available. To the University's knowledge, no appellate court has held otherwise. And other district courts have declined parties' requests to expand their authority beyond these bounds. *See, e.g., Sequal Techs., Inc. v. Stern*, No. 10CV2655 DMS NLS, 2012 WL 474464, at *2 (S.D. Cal. Feb. 14, 2012) ("[T]here is no good cause to require [Plaintiff] to bring any particular representative to the Mandatory Settlement Conference, so long as the representative it chooses has the requisite [settlement] authority[.]"); *United States v. Toler*, No. 2:07-CV-603, 2009 WL 10679182, at *1 (S.D. Ohio Dec. 30, 2009) (granting the government relief from its previous order requiring a

representative with full settlement authority attend mediation and deeming it sufficient that such individual be available by phone).

**C.  Even If District Courts Have Some Discretion To Order a Specific Representative to Appear at Settlement Conference to Be Conducted in Open Court, The District Court Abused That Discretion Here.**

For the reasons just given, ordering a public settlement conference would be an abuse of discretion in any context.  So would ordering a specific high-ranking individual to attend a settlement conference on a party's behalf.  But ordering both of those things together—particularly where the district court has given every indication that the proceedings are not actually intended to facilitate settlement and where the individual ordered to attend is a high-ranking State official—makes the abuse of discretion here particularly acute.

**1.  The District Court Does Not Appear to Have Good-Faith Efforts at Settlement In Mind.**

Judge Tarnow has given every indication that the purpose of the upcoming conference is not to actually facilitate settlement.  Indeed, Judge Tarnow's chambers has made clear that he would still like to hold the conference "even if the parties are able to resolve the cross-examination issue as applied to Mr. Doe."  Ex. D (Email of Apr. 30, 2019).  And his last-minute decision to hold the conference on the record and in open court—which contravenes a long tradition preserving the privacy of

settlement negotiations, not to mention a prior written representation to the parties—only confirms that constructive settlement negotiations are not on the agenda.

Instead, Judge Tarnow appears to have his own views about what sort of policy "might be wise" and what the President's priorities ought to be. (*See* May 1, 2019 Tr. 6:14-17.) He has indicated that he intends to advise the President, the principal executive officer of a State governmental entity, about the wisdom of the University's sexual misconduct policy—a policy Judge Tarnow believes the President has a responsibility to "defend," on the record and in open court, to the media and the student body. (*Id.* at 6:14-17, 10:17-24.) And his latest Order, which purports to justify on-the-record proceedings on the ground that, in Judge Tarnow's view, "this case concerns matters of public importance," only confirms that that is what he intends to do. (Order Terminating as Moot Defendants' Motion for Judgment on the Pleadings and Motion for Protective Order, RE 54, Page ID # 1805.) Holding a public "settlement" conference for these purposes—and ordering a high-ranking official to attend—constitutes an abuse of discretion.

**2.** <u>The District Court's Order Oversteps the Bounds of Article III and Raises Federalism Concerns.</u>

Holding such a conference is particularly inappropriate here given that the University is part of State government, and the University President is its principal executive officer. *See* Mich. Const. Art. 8, § 5; *Ewing v. Board of Regents of Michigan*, 552 F. Supp. 881, 883 (E.D. Mich. 1982). Whether a policy change on

- 23 -

the part of a government entity is wise or unwise is a question for the State of Michigan, the University of Michigan, or the Congress to decide—not for an Article III court. *Cf., e.g. SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) ("Policy arguments are properly addressed to Congress, not this Court."). Indeed, this Court's decision in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), made clear that the question that remains at issue in this case—*i.e.,* whether cross-examination should be conducted by the parties or their agents—is a policy decision left to universities' discretion. *See, e.g., id.* at 583.

Concerns of federalism, foundational to our system of government, ought to make district courts especially careful when they purport to interfere with an autonomous State entity constitutionally entrusted with the policy questions at issue. *See, e.g., Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("[M]indful that our constitutional mandate and institutional competence are limited, we restrain ourselves from rewrit[ing] state law to conform it to constitutional requirements."). Indeed, the Michigan Constitution provides the University's Board of Regents, not federal district courts, with the authority to supervise the University's President. *See* Mich. Const. Art. 8, § 5. Judge Tarnow, however, apparently intends to take that role for himself:

> I think the President, part of his qualifications for the job
> when he was hired and when he continued in the job, is the

public [scrutiny][3] that the university is regularly under and he should be a part of this [process] so that he can defend whatever is [agreed] to and explain to the media, to the public, and perhaps most importantly to the faculty and the students. So he shall be here.

(May 1, 2019 Tr. at 10:16-24.)   Judge Tarnow also sought to impose his own priorities on the President, emphasizing his view that "[t]his should be more important to him than almost anything going on at the university." (*Id.* at 14:19-21.)

The University President is the chief executive officer of a complicated three-campus enterprise.  Consistent with the Michigan Constitution and the Board of Regents' directions, he leads a public university with approximately 61,000 students, 28,000 employees, and annual revenues of more than $8 billion—including a $4 billion academic medical center and a $1.5 billion annual research budget.  The President's daily schedule, set months in advance, reflects the seriousness and breadth of those responsibilities.  Reducing the incidence of sexual misconduct, providing fair processes, and supporting students who have been subjected to sexual assault are critically important goals for the entire leadership of the University.  But it is not for the district court to dictate the priorities and obligations of a specific State official.

---

[3] The bracketed terms in this quotation correct typographical errors in the transcript.

### 3.    The District Court Failed To Consider Less Burdensome Alternatives.

Judge Tarnow failed to consider less burdensome alternatives when he ordered the University Present to personally attend a settlement conference in open court. As to his last-minute Order that the settlement conference be conducted on the record in open court, Judge Tarnow did not even attempt to explain why in-chambers proceedings would be inadequate or consider any other alternatives. As to his prior Orders that the President must attend personally, Judge Tarnow acknowledged that the University had offered to send another official with full settlement authority to the conference, and that the President is not the individual with primary responsibility for the policy in question. (*Id.* at 7:23-25, 9:25-10:5.) Still, Judge Tarnow offered no reasoned basis for ordering him to attend and refused to consider the possibility of allowing him to attend via telephone. (*See id.* at 14:2-9.) In this context, Judge Tarnow's failure to adequately consider less burdensome options constitutes a clear abuse of discretion. *See Mariana Islands*, 694 F.3d at 1061; *In re Stone,* 986 F.2d at 905.

### 4.    The District Court Failed To Explain Its Reversal of Course.

Judge Tarnow's June 11, 2019 Order requiring that the settlement conference be held on the record and in open court directly contradicted his chambers' prior statement, in response to specific questions from counsel, that this would be a private conference held in chambers. *See* Ex. E (Email of May 24, 2019) (asserting that

"the settlement conference [would] be held in chambers, off the record"). That abrupt change—made without any explanation or even acknowledgment of the court's prior representation, and with fewer than 48 hours remaining before the conference—constituted an abuse of discretion. *Cf., e.g., Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 56 (1983) (explaining that an agency acts arbitrarily and capriciously where it "change[s] its view" without "explain[ing] its reasons for doing so").

### 5.   The District Court's Prior Conduct Raises Serious Doubts About the Integrity of the Scheduled Proceeding.

Finally, and respectfully, Judge Tarnow's prior conduct in this matter creates serious doubt about whether this conference will be conducted in an orderly fashion that befits the dignity of the judiciary.

For example, Judge Tarnow volunteered as "important"—in a case involving allegations of sexual assault—that there is a "nudist colony" or "nudist beach" near the University of California at San Diego, where the Plaintiff was considering attending graduate school.   (Transcript of June 11, 2018 Telephonic Status Conference, RE 20, Page ID # 276 at 6:13-17.)

- 27 -

On multiple occasions, both on and off the record, he has offered "jokes" about the deceased founding partner of the firm with which one of the University's outside counsel is affiliated.[4]

During an in-chambers proceeding on April 25, 2019, Judge Tarnow repeatedly swore and demanded to know where outside counsel attended law school and who taught him evidence and criminal law.

And today, with fewer than 48 hours' notice, Judge Tarnow ordered that a "settlement conference" be held in open court because, in his view, this "concerns matters of public interest." (Order Terminating as Moot Defendants' Motion for Judgment on the Pleadings and Motion for Protective Order, RE 54, Page ID # 1805).

There is conduct that might charitably be called odd or quirky. And then there is conduct that is unambiguously inappropriate. *See, e.g.,* Code of Judicial Conduct for United States Judges, Canons 1 & 2A (Mar. 2019); United States District Court for the Eastern District of Michigan, Administrative Order No. 08-AO-009, Civility Principles, Preamble & Principles 1, 2, 10 (Jan. 23, 2008). This is the latter. It ought

---

[4] For example, on June 11, 2018, the district court told the parties: "I should disclose I had breakfast with Mr. Miller last week . . . . And you should have him clean himself up a little bit. He had dirt on his face and tatters in his clothes." (*See id.*, Page ID # 275 at 5:14–17.).

not be countenanced within the federal judiciary.[5]  And it provides further reason for this Court to exercise its supervisory powers and restore order in this proceeding.

## II.    MANDAMUS IS APPROPRIATE.

### A.    The University Has No Other Means To Obtain Relief.

This Court has repeatedly held that mandamus relief is appropriate where "[t]he party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired."  *E.g.*, *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005); *see also In re Life Inv'rs Ins. Co. of Am.*, 589 F.3d 319, 323 (6th Cir. 2009) (mandamus jurisdiction may be exercised "when a party is *in danger of* harm that cannot be adequately corrected on appeal and has no other adequate means of relief") (emphasis added)).

That standard could have been written for this case.  The University has filed an emergency motion for reconsideration of the district court's Orders requiring the President to personally attend the upcoming conference; the district court denied that motion without analysis.  And Judge Tarnow's about-face with respect to the "on the record" status of the conference just two days beforehand has left the parties with no other means of recourse. The relief sought cannot wait for a reconsideration

---

[5] No one—regardless of title, seniority, or financial resources—should have to put up with proceedings that exceed even the farthest bounds of judicial discretion.  And if public institutions do not stand up for this principle, then individual litigants (including those with fewer resources) are at risk of the same kinds of treatment or worse.

motion or an appealable final judgment because the conference—now just two days away—would take place before any final judgment could issue.

Nor is it an option for the University to simply ignore the court's Orders, incur contempt sanctions, and appeal from the contempt order. Although the University is confident that it would prevail in such an appeal, it would take months—if not years—for such an appeal to be resolved. In the meantime, the University could face stigma and mounting sanctions for refusing to submit to a court order, however dubious. *See In re NLO*, 5 F.3d at 159 ("Alternatives such as defiance and appeal of any resulting contempt order . . . will result in irremediable prejudice."); *In re F.D.I.C.*, 58 F.3d 1055, 1060 n.7 (5th Cir. 1995) (rejecting notion that an appeal from a contempt order would be an adequate means to relief as "requiring a government official to incur a contempt sanction would have serious repercussions for the relationship between two coequal branches of government" (marks omitted)); *United States v. Hemphill*, 369 F.2d 539, 543 (4th Cir. 1966) (holding that the possibility of appellate review of a contempt order "would not provide an adequate legal remedy" because the official "would have been subject to sanctions" in the meantime).

## B.    This Petition Presents New And Important Problems For The Court's Review.

Mandamus is also appropriate because the district court's Orders present a "new and important problems" that warrant this Court's immediate intervention.

*Bendectin*, 749 F.2d at 304. To the University's knowledge, this Court has never addressed the important question of whether a court may require settlement negotiations to take place on the record in open court. Nor has it addressed whether a court may require a specific, high-ranking state or corporate officer to attend a settlement conference when another official with full settlement authority and knowledge of the underlying issues is available to attend. This Court should take the opportunity to correct the district court's errors and clarify the law in this Circuit.

### C.   The University Will Suffer Irreparable Harm If It Is Unable To Obtain The Relief That It Seeks.

The irreparable harm the University stands to suffer absent mandamus relief weighs strongly in favor of granting its petition. Absent prompt mandamus relief, the University will be forced to choose between complying with an unlawful court order and incurring contempt sanctions. As already explained, a contempt order would "result in irremediable prejudice." *In re NLO*, 5 F.3d at 159; *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 286 (7th Cir. 2014) ("Although a court hearing an appeal from a final decision may reverse a lower court's contempt ruling, it may not be able to undo the injury already suffered by a contemnor . . . .") (marks omitted). By contrast, granting the petition will cause no harm given the University's willingness to send a representative with full settlement authority to participate in an appropriately private settlement conference.

Indeed, it merits emphasis that the University has always been willing to participate in genuine, good-faith settlement proceedings in this matter. But the implications of the University's acquiescing to Judge Tarnow's flawed position that a district court, without justification, can require any state officer to conduct public, on-the-record settlement discussions are staggering. The University has approximately sixty pending litigation matters, including four before Judge Tarnow. If these Orders are permitted to stand, the University faces the possibility of being forced to have its President attend public conferences in some or all of these actions. Public universities throughout the country will face the same risk. As will other state entities, federal agencies, corporations, and non-profits. The University—like other major state, federal, and corporate entities—cannot function effectively unless courts respect its right to conduct settlement discussions in private and its leaders' ability to delegate to subordinates.

## **CONCLUSION**

For the foregoing reasons, the University respectfully requests this Court issue a writ of mandamus ordering the district court (1) to hold any settlement conference off the record, and (2) to permit the University to send to that conference a representative of its choosing. The University further requests that, if at all possible, the Court rule on the University's petition—or grant its separately filed motion and

issue a stay—no later than June 12, 2019, in order to avoid the irreparable harm the

University will otherwise sustain as a result of the district court's Orders.


Dated: June 11, 2019                    Respectfully submitted,

                                        /s/ *Erin L. Ramamurthy*_____

Timothy G. Lynch                        Stephen J. Cowen
Vice President and General Counsel      Amanda K. Rice
UNIVERSITY OF MICHIGAN                   Erin L. Ramamurthy
5010 Fleming Administration Bdg.        Andrew J. Clopton
503 Thompson St.                        JONES DAY
Ann Arbor, MI 48109                     150 W. Jefferson St., Suite 2100
(734) 764-0305                          Detroit, MI 48226
timlynch@umich.edu                      (313) 230-7954
                                        scowen@jonesday.com

*Counsel for Petitioners/Defendants*
*University of Michigan and the Board of Regents of the University of Michigan*

## <u>CERTIFICATE OF COMPLIANCE WITH FILING RULES</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 7,308 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1), as counted using the word-count function on Microsoft Word 2016 software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14 point font.

Dated:  June 11, 2019                    Respectfully submitted,

                                        */s/ Erin L. Ramamurthy*
                                        Erin L. Ramamurthy

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2019, I served the foregoing Emergency Petition for Writ of Mandamus by e-mail upon all parties to the proceedings in the district court or their counsel of record.

Dated:  June 11, 2019                          Respectfully submitted,

*/s/ Erin L. Ramamurthy*
Erin L. Ramamurthy

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**JOHN DOE,**

              Plaintiff,                  **HONORABLE ARTHUR J. TARNOW**

    v.                             **No. 18-11776**

**UNIVERSITY OF MICHIGAN, ET AL.,**

              Defendants.
_____/


**MOTION HEARING**


**Wednesday, May 1, 2019**


Appearances:

FOR THE PLAINTIFF:           DEBORAH GORDON, ESQ.
FOR THE DEFENDANT:           JOSH RICHARDS, ESQ.
                            PATRICK NUGENT. ESQ.
                            BRIAN SCHWARTZ, ESQ.

                        -   -   -

*To obtain a certified transcript, contact:*
*Lawrence R. Przybysz, MA, CSR, RPR, RMR, CRR*
*Official Federal Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 124*
*Detroit, Michigan 48226*
*(313)414-4460. Lawrence_Przybysz@mied.uscourts.gov*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

*Motion Hearing*
*Wednesday, May 1, 2019*

**I  N  D  E  X**

−    −    −

MOTION HEARING....................................P. 3

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 3

1                           Detroit, Michigan

2                           Wednesday, May 1, 2019

3                           2:30 p.m.

4                         -   -   -

5          **THE COURT:**  Good afternoon.

6          **MS. GORDON:**  Good afternoon, Judge Tarnow.

7          **THE COURT:**  Who is do we have, please?

8          **MS. GORDON:**  Deborah Gordon on behalf of the

9  plaintiff.

10          **MR. RICHARDS:**  And Josh Richards, your Honor, for the

11  university and Patrick Nugent joins me in my office.  He's on

12  the briefs as well.

13          **THE COURT:**  And?

14          **MR. SCHWARTZ:**  Brian Schwartz.

15          **THE COURT:**  We are on the record.  It's my

16  understanding there was a request for this phone conference for

17  a clarification of the meeting that we will have in a couple

18  weeks and we have to pick a date for that meeting.

19          **MR. RICHARDS:**  Yes, your Honor.

20          **THE COURT:**  Please identify yourself when you speak

21  because there are three voices that sound similar for the

22  defendant unless -- if you can coordinate it and all three of

23  you speak at the same time saying the same thing, we have a

24  baritone here if you have the rest of the harmony down.

25          **MR. RICHARDS:**  For the university, your Honor, yes,

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 4

1   we made the request for clarification because when we read the

2   e-mail from the Court, it wasn't clear to us whether the Court

3   had changed its view on the Cross-Examination issue and if that

4   was the case, we wanted a chance to discuss that.  And, in

5   addition, as the Court just alluded to, to discuss the purpose

6   of the Status Conference to be set in a couple weeks.

7           **THE COURT:**  Okay.  Is that it for the reason for this

8   conference, those two items?

9           **MR. RICHARDS:**  From the university's end, this is

10  Mr. Richards, your Honor, yes.

11          **THE COURT:**  What about from the plaintiff's end?

12          **MS. GORDON:**  Yes, I have no issues, Judge.

13          **THE COURT:**  Okay.  Both requests are reasonable and

14  I'm going to add another thing to the agenda and that is, if

15  and when, not if, but when we have the conference, is there any

16  objection to also touching on the other case where the same

17  attorneys are involved and the same defendant, different

18  plaintiff, the Lipian came?

19          **MS. GORDON:**  None from plaintiff, Judge.

20          **MR. RICHARDS:**  Brian Schwartz.  I'm not sure what not

21  issues will be raised.

22          **THE COURT:**  I am not sure what issues will be raised

23  but I can conceive that there could be none because I note that

24  there is a hearing on the 14th in front of Magistrate Mazoub

25  and everything might be resolved in the Lipian case on that

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 5

1   date.  But if not or if there is anything remaining, that

2   should be discussed or could be discussed and save some time

3   and paper and electronic bites.

4         **MR. SCHWARTZ:**  I agree that would make sense.

5   Hopefully everything will be resolved with the Magistrate.  But

6   if not, I'm sure we could use that time.

7         **THE COURT:**  Now, in terms of the Cross-Examination

8   issue, what are your thoughts?  And I will ask Ms. Gordon first

9   whether it looks like you are going to be able to resolve it.

10        **MS. GORDON:**  Judge --

11        **THE COURT:**  Or is it worthwhile waiting and talking

12  about it at the meeting?

13        **MS. GORDON:**  So per your prior instruction, I am

14  prepared by tomorrow is my cut-off date to send to defense

15  counsel my listing of concerns with the new policy which you

16  had instructed we do and then you said they would have seven

17  days to respond at which point we will have some better idea

18  whether we are going to be able to agree on the process and

19  whether we will simply go forward on the process or we will

20  need the Court's assistance.  So I am ready to go on that and I

21  have a draft.

22        **THE COURT:**  Okay.  Stop.  Stop.  You don't have to

23  say it again.

24        **MS. GORDON:**  Okay.

25        **THE COURT:**  Who is going to speak for the defendant?

*18-11776; John Doe v. University of Michigan, et al.*

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 6

1      **MR. RICHARDS:**  Josh Richards, your Honor.

2      **THE COURT:**  Do you have any problem with keeping to

3   the schedule?

4      **MR. RICHARDS:**  No, your Honor.  That schedule is fine

5   with the university.

6      **THE COURT:**  Okay.  And I am going to include it as a

7   topic that we are going to talk about at the conference with

8   the President because I may have over simplified the definition

9   of Cross-Examination being congruent with the criminal case.

10  And on further consideration, I don't want you guys to agree

11  fully with me and then my having to tell you that it may not be

12  congruent to the extent that -- and this is something I want

13  the two of you to talk about -- what limitations on the

14  Cross-Examination which would protect both parties.  For

15  example, it might be wise that the Cross-Examination could be

16  done by an independent person or trained, independent person or

17  a lawyer but not by the accused.

18      **MS. GORDON:**  May I, Judge?

19      **THE COURT:**  Sure.

20      **MS. GORDON:**  Okay.  So I have taken all of that into

21  account.  I heard what you said.  I am working off of the

22  university's current January 2019 policy language.  They have

23  given some thought already to whether they want to have a third

24  party do the questioning.  Their current policy does not allow

25  for that.  I would say that Doe versus Baum (ph) did allow for

*18-11776; John Doe v. University of Michigan, et al.*

Page 7

1    that.  But to the extent the university is not allowing for

2    that, I am willing to live with that.  I mean, I don't care.

3    It's fine with me.  So I am taking into account what you said

4    but I am also very cognizant, perhaps moreso, of what Doe

5    versus Baum (ph) says and what the university's new policy

6    says.  So everything I'm going to send to defense counsel is

7    going to be based on what they currently have and where I think

8    there are due process problems with what they currently have.

9         **THE COURT:**  Okay.  What about the defense?  Who is

10   this.

11        **MR. RICHARDS:**  Josh Richards.  On that particular

12   point, your Honor, I agree with Ms. Gordon that Doe versus Baum

13   leaves it to institutions' discretion as to whether the

14   cross-examination will be performed by the party because, of

15   course, Cross-Examination is permitted for both parties, or by

16   a representative of that party.

17        **THE COURT:**  Okay.  Well, then let's continue with the

18   schedule we have.  Now, the only thing left to discuss today is

19   when are we going to meet?

20        **MR. RICHARDS:**  Your Honor, Josh Richards.  Before we

21   move on to procedural matters, I would like to address with the

22   Court the purpose of the Court's request that the President

23   attend.  And I would like to note that the President is not the

24   university official who has primary responsibility for the

25   policy.

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 8

1      **THE COURT:**  And that would be the chief counsel?  Who

2   is that person who would have that responsibility?

3      **MR. RICHARDS:**  I would have to check with my client

4   as to who the right person would be, your Honor, but it is

5   certainly not the President.

6      **THE COURT:**  Well, you can check with the President

7   and whoever else you have to check with and when you find the

8   right person, you can bring her or him along with the President

9   and then everyone will be complete in terms of people with

10  authority.  And obviously the ultimate authority is the

11  President.

12      **MR. RICHARDS:**  Your Honor, that may be true --

13      **THE COURT:**  He might not be the person with the most

14  hands-on experience and authority, but he is the one who is

15  going to have to approve whatever the four of you decide on and

16  whatever I might add to that decision.

17      **MR. RICHARDS:**  So a few things on that point, your

18  Honor.  First, the President can delegate the ultimate

19  authority that the Court is referring to to someone else who

20  can attend the conference and is willing to do so.  What I am

21  trying to figure out is what is the Court's purpose in

22  requiring the President to attend?

23      **THE COURT:**  I don't want anything that we decide to

24  have to be reviewed by the President which as I understand

25  university structure, this is the kind of decision that

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 9

1    ultimately would have to be at least okayed by the President.

2         **MS. GORDON:**  Excuse me, Judge.  If I could just chime

3    in on one point here.  The reason this is set up the way it is

4    is that you ask Mr. Richards at the Status Conference these

5    very questions.  You wanted to know who was responsible for the

6    policy.  And he ended up saying after a discussion a little bit

7    of, some stuff we are hearing now, he did say ultimately it's

8    the President.

9         **MR. RICHARDS:**  That's not what I said.

10        **MS. GORDON:**  That was my recollection.

11        **THE COURT:**  Ms. Gordon, Ms. Gordon --

12        **MS. GORDON:**  Yes.

13        **THE COURT:**  And both of you, it doesn't matter what

14   was said at that conference.  I don't think there is any

15   dispute to the statement that I just made that the ultimate

16   authority in an university on a question of this kind of policy

17   has to be the President of the university.  Yes, he can

18   delegate.  Obviously, with such a large institution there are

19   all sorts of delegations made.  But I don't think he would

20   characterize himself as a figure head.  And I think he would,

21   and I would agree, that the person down the line in charge of

22   discipline or however it's structured knows more about the

23   day-to-day operation and so on.  But that person reports to the

24   President and the President will be here.

25        **MR. RICHARDS:**  Respectfully, your Honor, if the

Page 10

1    Court's concern is that the person at the conference will not

2    have authority to make an agreement without consulting with the

3    President, I can assure the Court that the person at the

4    conference will have that authority.

5            **THE COURT:**  I believe you 100 percent.

6            **MR. RICHARDS:**  That being the case --

7            **THE COURT:**  No, no.  I have not changed my mind

8    because while that person will have the authority, and it's

9    mildly surprising or more than mildly surprising you don't even

10   know who that person is or their job title, I want the

11   President here.  He will be here.

12           **MR. RICHARDS:**  Again, your Honor, I am asking the

13   Court to articulate the reason for the President being there in

14   light of the university's offer to produce somebody who will

15   have authority.

16           **THE COURT:**  I don't have to explain myself, but I

17   will.  And it's I think the President, part of his

18   qualifications for the job when he was hired and when he

19   continued in the job, is the public strict any that the

20   university is regularly under and he should be a part of this

21   parentheses so that he can defend whatever is dread to and

22   explain to the media, to the public, and perhaps most

23   importantly to the faculty and the students.  So he shall be

24   here.

25       I was tempted to quote an appellate judge I saw on C-Span

Page 11

1    once -- no, it wasn't that.  It was a Judge, an appellate Judge

2    when I was still practicing and he, the Judge, asked the

3    question, that I thought was very simple and I said this is the

4    answer.  Why wouldn't the person want the information that I

5    was asking for?  And the Judge pushed back in his seat so he

6    would be off microphone and said, I gave up the big bucks to

7    ask the questions, and you don't get to ask the questions.  I

8    waived that rule.  I answered your question.  And if you start

9    another sentence with again, I will again repeat myself.

10          **MR. RICHARDS:**  Josh Richards.  I understand the

11   Court.  I want to clarify that the Court is ordering that the

12   President appear.

13          **THE COURT:**  If you need to say that, that's fine.  If

14   you want me to put it in writing so the media has it, it will

15   be something like, the President has been requested to

16   participate in a discussion of a proposed rule and has chosen

17   not to appear.  Therefore, I order that he appear.  Is that

18   what you want?

19          **MR. RICHARDS:**  I am not asking the Court to put it in

20   writing.  I am simply asking the Court to make it clear so when

21   I explain it to my client I can explain to my client precisely

22   what the situation is.

23          **THE COURT:**  You can.  And I made it clear.  And you

24   can order a transcript.  I am asking that he participate so

25   that the result is not another two years of arguing about

Page 12

1   discovery in this case and every subsequent case and arguing

2   about timeliness of motions to dismiss or summary judgment or

3   anything else legalistic when my sense is that both sides have

4   a common goal and, that is, to provide fairness to the accuser

5   and fairness to the accused.

6        **MR. RICHARDS:**  Josh Richards.  I certainly degree

7   with the Court's final statement with respect to fairness.  And

8   in the light of the Court's order I have two additional, I

9   guess, procedural questions.  The first is if the purpose of

10  the conference in light of the fact that there is no pending

11  motion is to discuss resolution of the claims, then one of the

12  requests that I made in my first e-mail to your law clerk was

13  that the Court consider referring this matter to a colleague.

14  The claims in this case are sufficiently complex and frankly

15  uncertain at this point that I don't think it's outside the

16  realm of possibility that some questions in this case will be

17  for the Court.  And if that is the case, I think it would be

18  proper for another colleague of your Honor to facilitate the

19  discussion that your Honor is proposing that the parties have.

20       **THE COURT:**  Your request is noted.  What is your

21  second request?

22       **MR. RICHARDS:**  My second request is much more nuts

23  and bolts and it has to do with timing.  The 16th which the

24  Court has initially proposed as a date for the conference is as

25  we noted in my response the date of the meeting --

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 13

1      **THE COURT:**  You can stop.  Here are the choices.

2  Tuesday May 21st at 11:30.  Is that available to you and your

3  client or do you have to check?

4      **MR. RICHARDS:**  I have to check, your Honor. I

5  apologize.

6      **THE COURT:**  Don't apologize.  You are not

7  clairvoyant.  If that is -- the other choice is Thursday,

8  May 23rd at 11:00 a.m.  So the first choice is at 11:30 on the

9  21st, and the second choice is the 23rd at 11:00.  And I trust

10  that one of those dates will be suitable for all of you.

11      **MR. RICHARDS:**  My first question -- Josh Richards for

12  the record.

13      **THE COURT:**  Pardon?

14      **MR. RICHARDS:**  My first request with respect to the

15  referral, your Honor --

16      **THE COURT:**  It's noted.  I am not going to refer it.

17  And please don't ask me why.  You don't want to hear why.  And

18  the reason is you would have to start -- you do want to hear

19  why.  The reason is whoever I referred it to would have to

20  start over in terms of understanding the scope of the

21  conference, the scope of at least the Doe case -- and this is a

22  jury trial, am I right?

23      **MS. GORDON:**  That's correct, Judge.

24      **THE COURT:**  There is nothing other than make work in

25  your suggestion.  And so it is denied but is noted on the

*Motion Hearing*
*Wednesday, May 1, 2019*

Page 14

1  record.

2          **MR. RICHARDS:**  With respect to those due dates, your

3  Honor, the May 21st date and the May 23rd date, in the event

4  there is a conflict on the university's end with respect to

5  some portion of that time, would attending by telephone be an

6  option?

7          **THE COURT:**  No.  That is an easy question.  It's not

8  like you are a plane trip away.  I won't tell you how fast I

9  used to be able to get to U of M.

10         **MR. RICHARDS:**  Again, your Honor --

11         **THE COURT:**  It's less than an hour.

12         **MR. RICHARDS:**  I wasn't referring to counsel.  I was

13  referring to the President.

14         **THE COURT:**  I know.  I am referring to Ann Arbor's

15  relationship to Detroit. Counsel, he chose to have an Ann

16  Arbor/Detroit case.  I am talking about your client,

17  specifically, the President.

18         **MR. RICHARDS:**  I understand, your Honor.

19         **THE COURT:**  Let me say this.  This should be more

20  important to him than almost anything going on at the

21  university.  I understand the importance of the Board Meeting,

22  Regents meeting, and that is why I have no problem giving

23  alternative dates.  But I am not sure I would understand

24  anything else being more important than resolving what is a hot

25  button issue at every university in this country.  So,

Page 15

1   therefore, I would be looking for a very strong excuse for him

2   not to be able to come on one of those two dates.  And the

3   question might be, which of the dates is more convenient for

4   the plaintiff lawyer because your client could come on either

5   date.  Anything else?

6           **MS. GORDON:**  No, Judge.  Plaintiff will make –– we

7   will make ourselves available whenever the date –– either date

8   we are available we will clear our schedules if need be.

9   Whatever will work for everybody else is fine.

10          **THE COURT:**  All right.  Anything from the defense?

11          **MR. RICHARDS:**  No, your Honor.

12          **THE COURT:**  Thank you.

13          **MS. GORDON:**  Thank you for your time, Judge.

14                          –   –   –

15

16

17

18

19

20

21

22

23

24

25

1     **C E R T I F I C A T I O N**

2          I, Lawrence R. Przybysz, official court reporter

3     for the United States District Court, Eastern District of

4     Michigan, Southern Division, appointed pursuant to the

5     provisions of Title 28, United States Code, Section 753,

6     do hereby certify that the foregoing is a correct

7     transcript of the proceedings in the above-entitled cause

8     on the date hereinbefore set forth.

9          I do further certify that the foregoing

10    transcript has been prepared by me or under my direction.

11

12
      s/Lawrence R. Przybysz
13    Official Court Reporter

14    Date: May 3, 2019

15                              -   -   -

16

17

18

19

20

21

22

23

24

25

*18-11776; John Doe v. University of Michigan, et al.*

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

              Plaintiff,

v.

UNIVERSITY OF MICHIGAN, ET AL.,

              Defendants.

Case No. 18-11776

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

_____/

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION [44]**

On May 1, 2019, the Court held a phone conference at which it ordered the President of the University of Michigan to appear at an upcoming settlement conference because of his ultimate authority to resolve issues regarding the University's sexual misconduct policy. During the phone conference, the Court also denied the University's request to refer the settlement conference to a different judge within the Eastern District.

On May 6, 2019, Defendants filed a Motion for Reconsideration [44] of the Court's rulings at the May 1st phone conference.

Local Rule 7.1(h)(3), which governs motions for reconsideration, provides:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

"[T]he decision to grant the motion is within the court's discretion." *In re Greektown Holdings, LLC*, 728 F.3d 567, 574 (6th Cir. 2013).

Because Defendants have neither demonstrated a palpable defect by which the Court has been misled nor shown that correcting the defect will result in a different disposition of this case,

**IT IS ORDERED** that Defendants' Motion for Reconsideration [44] is **DENIED**.

**IT IS FURTHER ORDERED** that the President of the University of Michigan appear for a settlement conference on **Tuesday, June 11th at 11:00 AM**.[1]

---

[1] The Court previously provided the University with three possible dates for the settlement conference, all of which were rejected because of the President's unavailability. The Court expects that the President will make himself available for the upcoming settlement conference scheduled for June 11, 2019. If, however, there is a compelling reason as to why the President is unable to appear on that date, the Court would entertain a motion to reschedule the conference for June 12th or 13th.

Page **2** of **3**

The University shall not resume any proceedings concerning Plaintiff's alleged conduct until after the settlement conference.

**SO ORDERED**.


                                      s/Arthur J. Tarnow
                                      Arthur J. Tarnow
Dated: May 8, 2019                    Senior United States District Judge

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

        Plaintiff,

v.

UNIVERSITY OF MICHIGAN, ET AL.,

        Defendants.

Case No. 18-11776

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

_____/

**ORDER TERMINATING AS MOOT DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS [35] AND MOTION FOR PROTECTIVE ORDER [39]**

On June 4, 2018, Plaintiff John Doe commenced this action alleging that the

University of Michigan's Policy and Procedures on Student Sexual and Gender-

Based Misconduct and Other Forms of Interpersonal Violence ("Policy") violates

the Fourteenth Amendment, Title IX, and Michigan's Elliot-Larsen Civil Rights Act.

On August 6, 2018, Defendants filed a Motion for Judgment on the Pleadings

[35]. On August 9, 2018, Defendants filed a Motion for Protective Order [39].

Plaintiff filed a Second Amended Complaint [47] on May 22, 2019.

Defendants filed a Motion to Dismiss the Second Amended Complaint [49] on June

5, 2019.

"[A]n amended complaint supersedes all prior complaints." *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 n.8 (6th Cir. 2008) (quoting *Drake v. City of Detroit*, 266 Fed. App'x 444, 448 (6th Cir. 2008)). Accordingly, the motions [35, 39] associated with the Amended Complaint [28] will be rendered moot. *See Brent v. Wayne Cnty. Dep't of Human Servs.*, No. 11-10724, 2011 WL 5975265, *12 fn.13 (E.D. Mich. Nov. 28, 2011).

Furthermore, the Court takes this opportunity to remind the parties of the upcoming settlement conference scheduled for **June 13, 2019 at 10:00 AM**. Because this case concerns matters of public interest, the conference, although an informal proceeding, will be held on the record in open court.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Judgment on the Pleadings [35] is **TERMINATED without prejudice.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order [39] is **TERMINATED without prejudice.**

**SO ORDERED**.


                                   s/Arthur J. Tarnow
                                   Arthur J. Tarnow
Dated: June 11, 2019               Senior United States District Judge

# EXHIBIT D

| | |
|---|---|
| **From:** | Jaclyn_Pilcowitz@mied.uscourts.gov |
| **Sent:** | Friday, May 3, 2019 11:31 AM |
| **To:** | Elizabeth Marzotto Taylor |
| **Cc:** | Deborah Gordon; Richards, Joshua W. B.; Mike_Lang@mied.uscourts.gov; schwartzb@millercanfield.com |
| **Subject:** | RE: Doe v. U of M (18-11776) |

Counsel:

Have you decided on a date for the conference? As a reminder, the Court is available on Tuesday, May 21st at 11:30 AM or Thursday, May 23rd at 11:00 AM.

Thanks,

Jackie Pilcowitz
Law Clerk to the Honorable Arthur J. Tarnow
Theodore Levin United States Courthouse
231 West Lafayette Boulevard Room 124
Detroit, MI 48226
Chambers: 313-234-5180

From:    Elizabeth Marzotto Taylor <emarzottotaylor@deborahgordonlaw.com>
To:    "Richards, Joshua W. B." <Joshua.Richards@saul.com>, "Jaclyn_Pilcowitz@mied.uscourts.gov" <Jaclyn_Pilcowitz@mied.uscourts.gov>
Cc:    Deborah Gordon <dgordon@deborahgordonlaw.com>, "schwartzb@millercanfield.com" <schwartzb@millercanfield.com>,
"Mike_Lang@mied.uscourts.gov" <Mike_Lang@mied.uscourts.gov>
Date:    05/01/2019 01:07 PM
Subject:    RE: Doe v. U of M (18-11776)

Ms. Pilcowitz,
We are also available at 2:30, and can be reached at 248-258-2500.

Elizabeth A. Marzotto Taylor
Attorney & Counselor at Law
DEBORAH GORDON LAW
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304-2909
Phone: (248) 258-2500
Toll Free: (800) 410-4480
Fax: (248) 258-7881
emarzottotaylor@deborahgordonlaw.com

-----Original Message-----
From: Richards, Joshua W. B. [mailto:Joshua.Richards@saul.com]
Sent: Wednesday, May 01, 2019 12:46 PM
To: Jaclyn_Pilcowitz@mied.uscourts.gov
Cc: Deborah Gordon; schwartzb@millercanfield.com; Mike_Lang@mied.uscourts.gov; Elizabeth
Marzotto Taylor
Subject: Re: Doe v. U of M (18-11776)

Ms. Pilcowitz,

1

I am available at 2:30 today and may be reached at 215-972-7737.

Respectfully,



Joshua W. B. Richards
 Saul Ewing Arnstein & Lehr LLP

Centre Square West
1500 Market Street, 38th Floor<x-apple-data-detectors://0/1> |<x-apple-data-detectors://0/1> Philadelphia, PA 19102-2186<x-apple-data-detectors://0/1>

Tel: 215.972.7737<tel:215.972.7737> | Fax: 215.972.1831<tel:215.972.1831>

joshua.richards@saul.com<mailto:joshua.richards@saul.com> | bio<http://www.saul.com/attorneys/joshua-richards> | www.saul.com<http://www.saul.com/>



On May 1, 2019, at 12:15 PM,
"Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn Pilcowitz@mied.uscourts.gov>"
<Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn Pilcowitz@mied.uscourts.gov>> wrote:

Judge Tarnow would like to schedule a phone conference for today at 2:30 PM. A court reporter will be present. Please confirm your availability and email your phone numbers to our case manager, Mike Lang, cc'd here.

Jackie Pilcowitz
Law Clerk to the Honorable Arthur J. Tarnow
Theodore Levin United States Courthouse
231 West Lafayette Boulevard Room 124
Detroit, MI 48226
Chambers: 313-234-5180



From:        "Richards, Joshua W. B."
<Joshua.Richards@saul.com<mailto:Joshua.Richards@saul.com>>
To:          "'Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn Pilcowitz@mied.uscourts.gov>'" <Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn Pilcowitz@mied.uscourts.gov>>
Cc:          "dgordon@deborahgordonlaw.com<mailto:dgordon@deborahgordonlaw.com>"
<dgordon@deborahgordonlaw.com<mailto:dgordon@deborahgordonlaw.com>>,
"schwartzb@millercanfield.com<mailto:schwartzb@millercanfield.com>"
<schwartzb@millercanfield.com<mailto:schwartzb@millercanfield.com>>
Date:        04/30/2019 10:04 PM
Subject:     RE: Doe v. U of M (18-11776)
_____



Dear Ms. Pilcowitz,
Thank you for your email.  Having reviewed the Court's instructions carefully, the University is unclear on the path forward and the parties' obligations coming out of the status conference.  If the Court has changed its position on the cross-examination issue, it would benefit the parties in resolving the issue if the Court shared that position.  The University requests that the Court schedule a short telephonic conference on the record to clarify the Court's position before Ms. Gordon submits her position to

the University and to discuss the purpose of the upcoming status conference so the
parties can adequately prepare.
In addition, and in response to your question about the parties' availability, the
President is not available on May 16 because he will be in an all-day meeting of the
University's Board of Regents as set forth in the University's April 27 email.

Respectfully yours,

Joshua W. B. Richards
 Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor | Philadelphia, PA 19102-2186
Tel: 215.972.7737 | joshua.richards@saul.com<mailto:joshua.richards@saul.com>
tw
@JoshWBRichards<https://twitter.com/JoshWBRichards>  |  bio<http://www.saul.com/attorneys
/joshua-richards>

From: Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn_Pilcowitz@mied.uscourts.gov>
[mailto:Jaclyn_Pilcowitz@mied.uscourts.gov]
Sent: Tuesday, April 30, 2019 12:21 PM
To: Richards, Joshua W. B.
Cc: dgordon@deborahgordonlaw.com<mailto:dgordon@deborahgordonlaw.com>;
schwartzb@millercanfield.com<mailto:schwartzb@millercanfield.com>
Subject: RE: Doe v. U of M (18-11776)

Counsel:

I am writing to update you on the Court's position which has changed since the status
conference last week. Judge Tarnow has recently informed me that, even if the parties are
able to resolve the cross-examination issue as applied to Mr. Doe, he would still like to
schedule a meeting with the President regarding the policy. Please let me know whether
all parties, including the University President, are available on Thursday, May 16th at
12:00 PM or 3:30 PM.

Thank you,

Jackie Pilcowitz
Law Clerk to the Honorable Arthur J. Tarnow
Theodore Levin United States Courthouse
231 West Lafayette Boulevard Room 124
Detroit, MI 48226
Chambers: 313-234-5180

From:        "Richards, Joshua W. B."
<Joshua.Richards@saul.com<mailto:Joshua.Richards@saul.com>>
To:        "'Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn_Pilcowitz@mied.uscourts.gov
>'" <Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn_Pilcowitz@mied.uscourts.gov>>
Cc:        "schwartzb@millercanfield.com<mailto:schwartzb@millercanfield.com>"
<schwartzb@millercanfield.com<mailto:schwartzb@millercanfield.com>>,
"dgordon@deborahgordonlaw.com<mailto:dgordon@deborahgordonlaw.com>"
<dgordon@deborahgordonlaw.com<mailto:dgordon@deborahgordonlaw.com>>
Date:        04/27/2019 09:56 AM
Subject:        RE: Doe v. U of M (18-11776)

3

_____

Dear Ms. Pilcowitz,

Thank you for your email.  On behalf of the University I wanted to clarify three matters in response.

Your email speaks in terms of "amendments to the current policy."  I think the Judge was clear at the conference that Ms. Gordon represents only one plaintiff, Mr. Doe, and the policy writ large is not at issue here (and not subject to "amendment" as part of this process).  I think we're all on the same page that what we're discussing is clarifying how the policy will apply to Mr. Doe's hearing, but I wanted to be certain.  The University continues to believe the parties will be able to agree on the cross-examination issue.  As the University has represented to the Sixth Circuit and to Judge Tarnow, the University will provide Mr. Doe with cross-examination consistent with Baum - the hearing will be conducted by a hearing officer who's an attorney with extensive litigation experience and who is not a University employee.  And any appeal as to facts or the adequacy of process would be handled by a former federal district judge, Barbara Jones<https://bracewell.com/people/barbara-s-jones>.  For that reason, and in any event, we are hopeful that once we see Ms. Gordon's understanding of cross-examination set out practically, the parties won't have a dispute.  The University intends to review Ms. Gordon's communication in good faith and respond as directed by the Court.

With respect to the potential conference on May 15th, the University remains hopeful that the parties are able to agree on what cross-examination means.  However, if a conference is necessary, the University respectfully requests that the Court refer this matter to a colleague in the Eastern District to facilitate these settlement talks further.  Because these discussions are fundamentally about resolving the outstanding disputes among the parties, the University suggests that all involved would be best served if the discussions were presided over by a judge who will not be the ultimate decision-maker in the case.

Finally, if a conference is necessary, the University wishes to report that May 15th is the day before a formal meeting of the University's Board of Regents, so the President will not be available.  In the unlikely event a conference is necessary, the President can delegate his authority to the University's Vice President and General Counsel who would be authorized on the President's behalf to address any matters that arise.  The University is hopeful that this solution is acceptable to the Court.

Respectfully yours,



Joshua W. B. Richards
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor | Philadelphia, PA 19102-2186
Tel: 215.972.7737 | joshua.richards@saul.com<mailto:joshua.richards@saul.com>
tw
@JoshWBRichards<https://twitter.com/JoshWBRichards> | bio<http://www.saul.com/attorneys/joshua-richards>

From: Jaclyn_Pilcowitz@mied.uscourts.gov<mailto:Jaclyn_Pilcowitz@mied.uscourts.gov>
[mailto:Jaclyn_Pilcowitz@mied.uscourts.gov]
Sent: Thursday, April 25, 2019 3:36 PM
To: dgordon@deborahgordonlaw.com<mailto:dgordon@deborahgordonlaw.com>; Richards, Joshua
W. B.; schwartzb@millercanfield.com<mailto:schwartzb@millercanfield.com>
Subject: Doe v. U of M (18-11776)

**EXTERNAL EMAIL** - This message originates from outside our Firm. Please consider
carefully before responding or clicking links/attachments.


Counsel:

To ensure that there is no confusion, Judge Tarnow asked that I contact you regarding
next steps. Plaintiff will submit proposed amendments to the current policy, which will
include the definition of cross-examination, to Defendants in writing by Thursday, May
2nd. Defendants will respond to Plaintiff's proposal in writing by Thursday, May 9th.
Jointly, the parties will update the Court by email or phone on the status of resolution
by Friday, May 10th at 4 PM.

If the parties are unable to reach a resolution, the Court will schedule a conference the
following week at which the University President will be required to appear. Given Judge
Tarnow's availability, this conference would likely take place in the afternoon on
Wednesday, May 15th.

Thank you,

Jackie Pilcowitz
Law Clerk to the Honorable Arthur J. Tarnow
Theodore Levin United States Courthouse
231 West Lafayette Boulevard Room 124
Detroit, MI 48226
Chambers: 313-234-5180

"Saul Ewing Arnstein & Lehr LLP (saul.com<http://saul.com>)" has made the following
annotations:
+~~~~~~~~~~~~~~~~~~~~~~~~+
This e-mail may contain privileged, confidential, copyrighted, or other legally protected
information. If you are not the intended recipient (even if the e-mail address is yours),
you may not use, copy, or retransmit it. If you have received this by mistake please
notify us by return e-mail, then delete.
+~~~~~~~~~~~~~~~~~~~~~~~~+

# EXHIBIT E

| | |
|---|---|
| **From:** | Jaclyn_Pilcowitz@mied.uscourts.gov |
| **Sent:** | Friday, May 24, 2019 2:01 PM |
| **To:** | Richards, Joshua W. B. |
| **Cc:** | Piccola, Amy L.; Nugent, Patrick F.; Schwartz, Brian M.; Elizabeth Marzotto Taylor; Deborah Gordon; Mike_Lang@mied.uscourts.gov |
| **Subject:** | Re: Doe v. U of M (18-11776) |

**CAUTION EXTERNAL EMAIL:** DO NOT open attachments or click links from unknown or unexpected emails.

Yes, the settlement conference will be held in chambers, off the record. However, a court reporter will be available if necessary.

Because of the President's availability, the Court would like to start the conference at 10:00 AM instead of 11:00 AM. Our case manager will send out a notice of the change.

On May 23, 2019, at 8:41 AM, Richards, Joshua W. B. <Joshua.Richards@saul.com> wrote:

> Dear Ms. Pilcowitz,
>
> I am writing in the above-captioned matter to seek clarification of a few details with respect to the upcoming June 13 settlement conference. *See* Doc. No. 45 & Text-only order dated May 14, 2019. Because both of the Court's orders referring to this conference describe it as a settlement conference, may we confirm that the settlement conference will (a) be held in chambers, and (b) not be on the record?
>
> Finally, by way of reminder, the President is available on June 13 only until 12pm and will need to depart the settlement conference by noon.
>
> Respectfully,
>
> **Joshua W. B. Richards**
> **Saul Ewing Arnstein & Lehr LLP**
> Centre Square West
> 1500 Market Street, 38th Floor ǀ Philadelphia, PA 19102-2186
> Tel: 215.972.7737 ǀ joshua.richards@saul.com
> tw @JoshWBRichards ǀ bio

"Saul Ewing Arnstein & Lehr LLP (saul.com)" has made the following annotations:
+~~~~~~~~~~~~~~~~~~~~~~~+
This e-mail may contain privileged, confidential, copyrighted, or other legally protected information. If you are not the intended recipient (even if the e-mail address is yours), you may not use, copy, or retransmit it. If you have received this by mistake please notify us by return e-mail, then delete.
+~~~~~~~~~~~~~~~~~~~~~~~+